In the
 Missouri Court of Appeals
 Western District

 
 STATE OF MISSOURI, 
  WD83298
 Respondent,  OPINION FILED:
 v. 
  December 21, 2021
 DAVIUNE C. MINOR, 
 
 Appellant. 
 
 

 Appeal from the Circuit Court of Jackson County, Missouri
 The Honorable Patrick William Campbell, Judge

 Before Division Two:
 Thomas N. Chapman, P.J., Karen King Mitchell, and Anthony Rex Gabbert, JJ.

 Following a jury trial, Daviune Minor (“Minor”) appeals his convictions of three counts

of first-degree statutory sodomy and three related counts of incest. He was sentenced as a prior

offender to twenty-five years of imprisonment on each count of first-degree sodomy and four

years of imprisonment on each incest count. Minor raises five points on appeal: (1) the trial

court abused its discretion in admitting propensity evidence under article I, § 18(c) of the

Missouri Constitution; (2) the trial court abused its discretion in overruling Minor’s objections to

comments made by the State during closing argument; (3) the evidence was insufficient to

sustain Minor’s convictions on Counts V and VI (which alleged first-degree sodomy and incest

based upon penile-to-anus contact) because the evidence did not establish penetration; (4) the
trial court abused its discretion in admitting State’s Exhibits 31 and 32; and (5) the trial court

abused its discretion in allowing a Child Protection Center interviewer to testify as an expert

witness about the disclosure process for child victims. Because the trial court abused its

discretion in admitting some of the propensity evidence in this case, we would normally reverse

Minor’s convictions, and remand for a new trial. Because of the general interest and importance

of the application of article I, § 18(c) of the Missouri Constitution, however, we do not finally

decide Minor’s appeal, but instead order that this appeal be transferred to the Missouri Supreme

Court for final disposition.

 Background

 In August of 2013, Child1 (Minor’s biological daughter who was born in June of 2006)

lived with Minor, her mother, her siblings, and her paternal grandmother in her grandmother’s

home. Child was seven years old at the time. In the light most favorable to the verdict, Child

went to bed one night after dinner in a room she shared with her parents and siblings; her two

brothers slept on the floor, while Child slept in the bed with Minor, her mother, and her younger

sister. Child fell asleep while watching television but awoke to find Minor with his fingers

touching her vagina. At some point, Child ended up on the floor.2 Minor then followed Child to

the floor and attempted to “stick [his penis] in [her] vagina” and “stick [his penis] in [her] butt.”

Child also testified that Minor touched her mouth with his penis.

 1
 Pursuant to section 595.226.1, RSMo 2016, we refer to alleged victims of sexual offenses under chapter
566 by pseudonym. In this instance, we refer to the alleged victim as “Child.”
 2
 At one point, Child said she moved herself there, while at another point Child stated that Minor pulled her
to the floor.

 2
 In March of 2014, Child viewed a presentation at school about “good touches” and “bad

touches.” After the presentation, Child disclosed to her teacher that she had received a “bad

touch.” The teacher reported this disclosure to a school counselor, who reported the disclosure to

a child abuse hotline. An investigator from the Children’s Division went to Child’s school,

where she met with Child and Child’s brothers. After meeting with Child, an investigator for the

Children’s Division made a referral to the Child Protection Center (“CPC”) for a forensic

interview of Child. Child’s mother testified that Child disclosed to her later that day that Minor

had touched her inappropriately and had threatened to kill Child if Child said anything.

 Child was initially interviewed at the CPC on March 31, 2014. During this interview,

Child disclosed that Minor touched her vagina with his finger. Minor was subsequently arrested.

Child began participating in individual therapy. At some point, Child’s mother learned of

allegations that Minor had abused another girl. After consulting with Child’s therapist, Child’s

mother revealed to Child that there were other girls who had been abused by Minor. After this

information was revealed to Child, Child told her mother that Minor had put his penis in her

mouth and had “tried to put his ding-a-ling in [her] butt and it hurt.” After Child disclosed these

additional acts, Child’s mother contacted law enforcement and a second forensic interview took

place at the CPC in September of 2014. During the second interview, Child disclosed that Minor

had tried to put his “ding-a-ling” in her butt, and that he had forced her to suck his “ding-a-ling.”

 In December of 2017, during a conversation with Child’s mother, Child’s younger

brother informed his mother that he saw Minor touch Child inappropriately one night. Child’s

brother testified that he woke up one night to see Minor touching Child’s vagina with one hand

while covering her mouth with his other hand, and that Child had tears in her eyes. Child’s

brother testified that he then fell back asleep.

 3
 Pursuant to article I, § 18(c) of the Missouri Constitution, the State introduced evidence

of acts for which Minor was not on trial for the purpose of demonstrating that Minor had a

propensity to commit the charged offenses against Child. Prior to trial, the State filed a motion

seeking to introduce evidence that, when Minor was a fifteen-year-old juvenile, he had

committed an act that would constitute first-degree statutory sodomy (had he been an adult)

against an eight-year-old female victim, D.J., which was later adjudicated in the Family Court

Division of the Circuit Court of Jackson County. The State also sought to introduce evidence

that Minor had committed an act of first-degree statutory sodomy against another child, L.W., in

2012.3 Minor objected to the introduction of propensity evidence, arguing that any probative

value the evidence would have was substantially outweighed by the danger of unfair prejudice

that would accompany its admission. After a hearing, the trial court determined that it would

admit propensity evidence regarding Minor’s prior juvenile adjudication and the alleged prior

criminal act against L.W. in 2012.4

 At trial, in order to establish that Minor had (as a juvenile) committed a prior criminal act

against D.J., the State read from portions of the petition and findings in the juvenile court

adjudication. In order to show that Minor had committed the prior criminal act against L.W., the

State presented testimony from L.W., M.W. (L.W.’s brother), and T.F. (L.W.’s mother).

 The jury found Minor guilty of three counts of first-degree statutory sodomy and three

counts of incest. Minor now appeals to this court.

 3
 The initial charges against Minor included the allegation involving L.W., but the trial court had previously
granted a motion to sever and ordered a separate trial to adjudicate the allegations against each alleged victim.
 4
 The trial court also determined that other propensity evidence that the State sought to introduce with
respect to other alleged victims would not be admitted as propensity evidence.

 4
 Analysis

 Minor raises five points on appeal. In his first point, he argues that the trial court abused

its discretion in admitting propensity evidence. In his second point, he argues that the trial court

abused its discretion in overruling Minor’s objections to comments made by the State during

closing argument. In his third point, Minor contends that the evidence was insufficient to

support his convictions in Counts V and VI. In point four, Minor claims the trial court abused its

discretion in admitting exhibits that were not legally relevant. In his fifth point, he contends the

trial court abused its discretion in admitting testimony from a forensic interviewer regarding the

disclosure process for child victims of sexual abuse.

 We find that Minor’s first point has merit and that his convictions must be reversed. Due

to double jeopardy considerations, we also consider Minor’s third point on appeal, but find it

lacks merit. Because we would reverse and remand for a new trial, we do not reach Minor’s

remaining points.

 Point One

 In his first point on appeal, Minor argues that the trial court abused its discretion in

admitting propensity evidence under article I, § 18(c) of the Missouri Constitution. Minor

contends that the trial court erred in admitting propensity evidence to establish that he had

committed two distinct prior criminal acts for which Minor was not on trial: (1) that Minor had

committed a prior criminal act (of first-degree statutory sodomy) against L.W. in 2012, and (2)

that Minor had committed a prior criminal act (of first-degree statutory sodomy) against D.J. in

2000 while Minor was a 15-year-old juvenile.

 We find that the trial court abused its discretion with respect to the propensity evidence

admitted to establish that Minor had committed a prior criminal act against L.W. We find that

 5
some of the propensity evidence with respect to L.W.’s allegations would likely have been

admissible but for the nature and amount of the additional propensity evidence admitted

regarding L.W.’s allegations. In particular, if the propensity evidence had been limited to the

testimony of L.W., then such testimony would have been admissible, as L.W.’s testimony had

significant probative value that would not have been substantially outweighed by the danger of

unfair prejudice that accompanied it. However, the propensity evidence was not so limited, and

we find that the extensive additional testimony received (in addition to L.W.’s testimony) had

successively less probative value and carried an increasing and ultimately untenable danger of

unfair prejudice that substantially outweighed the probative value of the additional testimony.

Accordingly, article I, section 18(c) required its exclusion. With respect to the propensity

evidence of Minor’s prior juvenile adjudication, we find that the trial court did not abuse its

discretion in admitting such evidence.

 Standard of Review

 The circuit court’s decision to admit propensity evidence under article I, section 18(c), “is

reviewed for an abuse of discretion.” State v. Williams, 548 S.W.3d 275, 287 (Mo. banc 2018).

“The circuit court’s evidentiary ruling will not be disturbed unless it is clearly against the logic

of the circumstances.” Id. (internal quotations omitted). “[I]f reasonable persons can differ

about the propriety of the action taken by the trial court, then it cannot be said that the trial court

abused its discretion.” Id. (quoting Anglim v. Missouri Pac. R. Co., 832 S.W.2d 298, 303 (Mo.

banc 1992)). On direct appeal, we review the circuit court’s action “for prejudice, not mere

error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair

trial.” State v. Prince, 534 S.W.3d 813, 818 (Mo. banc 2017). “Trial court error is not

 6
prejudicial unless there is a reasonable probability that the trial court’s error affected the outcome

of the trial.” State v. Zink, 181 S.W.3d 66, 73 (Mo. banc 2005).

 Propensity evidence admitted at Minor’s trial

 Pursuant to article I, section 18(c) of the Missouri Constitution, the State filed pretrial

motions to admit propensity evidence that Minor had committed a prior criminal act against

L.W., and to admit evidence regarding the prior juvenile adjudication in which Minor admitted

he had abused D.J. In a later pretrial proceeding, Minor requested and received a standing

objection to propensity evidence regarding Minor’s uncharged act against L.W.5

 A jury was selected on the first day of trial. On the second day of trial, the State began its

case-in-chief by presenting evidence to establish that Minor had committed a prior criminal act

against L.W. by calling L.W., M.W. (L.W.’s brother), and T.F. (L.W.’s mother) to testify.6

 L.W. testified that she lived with T.F. (her mother) and M.W. (her brother) in 2012; that

Minor would sometimes stay with them at T.F.’s home; and that, when she was four or five,

Minor molested her by forcing his penis into her mouth and touching her butt. L.W. elaborated

that when this act occurred, L.W. was in her bedroom which she shared with M.W.; that Minor

 5
 The State contends that Minor invited error regarding the admission of propensity evidence with respect
to the testimony of M.W. and T.F. by cross-examining T.F. about subject matter similar to her testimony on direct
examination. Minor requested and received a continuing objection to the admissibility of propensity evidence
during a pretrial proceeding and directed the court’s attention to the continuing objection directly prior to the State
calling L.W. as a witness. “[W]hen a party objects to the admission of evidence and then cross-examines a witness
about the matter, the objecting party has not waived the error in admitting the evidence.” Jackson ex rel. Jackson v.
Jackson, 875 S.W.2d 590, 592 (Mo. App. E.D. 1994) (citing Chester v. Shockley, 304 S.W.2d 831, 835 (Mo. 1957));
M.A.B. v. Nicely, 909 S.W.2d 669, 672 (Mo. banc 1995) (“After having been ruled against, a party should be
permitted to make the best contest he can by offering countervailing evidence, without being put to the hazard of
losing the point of his objection.”). Accordingly, we find that Minor did not waive his challenge to propensity
evidence by subsequently cross-examining M.W. and T.F., and by later presenting a defense to the propensity
evidence which had been admitted.
 6
 The State further offered State’s Exhibits 3, 15, and 16. State’s Exhibit 3 was a timeline of events
established by T.F. relative to L.W.’s abuse and disclosure; it did not address particular conduct by Minor. State’s
Exhibits 15 and 16 were diagrams of male and female bodies used during a subsequent CPC interview of L.W.

 7
entered L.W.’s room and began touching her thighs; that L.W. told Minor to stop but he did not;

that M.W. woke and told Minor to stop touching his sister; and that Minor then led L.W. to T.F.’s

bedroom. L.W. indicated that she saw her mother (T.F.) asleep on the floor in the living room as

she walked to her mother’s bedroom; that, once inside of her mother’s bedroom, Minor laid

himself on the bed and pulled down his pants; that Minor then moved to the middle of the bed

and forced his penis into L.W.’s mouth and also forced her to move her hand around his penis;

that L.W. was underneath blankets while this occurred; and that Minor stopped when her brother

(M.W.) entered the room and yelled at Minor to get off of his sister. L.W. testified to the events

when she first reported the abuse: that, while watching a television program about a girl who

had been raped, L.W. accidently touched her brother’s butt, which led to her mother (T.F.) asking

whether anyone had touched L.W.; and that L.W. then told her mother and adult cousin that

Minor had touched her inappropriately. L.W. testified that she was later interviewed about the

abuse at the Child Protection Center where she drew circles on drawings to show where Minor

had touched her and which part of Minor’s body Minor had placed in L.W.’s mouth.

 M.W. (L.W.’s brother) testified to the general layout of the home where he lived with

L.W. and his mother (T.F.); and indicated that Minor would sometimes stay with them. M.W.

indicated that he awoke one night, and, after hearing sounds coming from his mother’s bedroom,

he opened his mother’s bedroom door and saw Minor laying down on the bed partially

underneath blankets; and observed that L.W. was completely under the blankets by Minor’s legs.

When M.W. asked Minor what he was doing, Minor told him to go back to bed. M.W. then went

back to bed in his own room.

 T.F. (L.W.’s mother) testified that she began dating Minor in 2012; that Minor would

sometimes babysit M.W. and L.W. while T.F. was at work; and that T.F. once sent M.W. with

 8
Minor to visit Minor’s mother at the hospital because T.F. thought Minor was “being sneaky.”

T.F. attested that she did not regularly drink alcohol; but that on one occasion she drank with

Minor to the point of intoxication in her living room; that she and Minor “were intimate that

night”; and that she ended up sleeping in the living room on a pallet on the floor. T.F. indicated

that she usually slept in her bedroom and could not remember any other night when she slept in

the living room. T.F. testified that Minor never slept at nighttime because he said he “fights

demons.” T.F. testified that she became pregnant by Minor; but that, upon learning of Minor’s

numerous infidelities, T.F. ended her relationship with Minor. T.F. further testified that, a week

or two after the breakup, L.W. was playing and hit another child on the butt and that L.W. then

reported that Minor kissed L.W. on the lips. T.F. indicated that she had in the past been a victim

of sexual abuse and that this experience gave her knowledge of what questions to ask L.W. T.F.

testified that L.W. later told her that Minor forced his penis into L.W.’s mouth; and that T.F.

repeatedly asked L.W. if she was sure, and L.W.’s story never changed. T.F. indicated that she

was hesitant to make a police report; and that such hesitancy related to T.F.’s own prior

molestation by a foster cousin who could have been sent away if she reported him. T.F. testified

that she was not aware of Minor’s prior juvenile adjudication, but had become aware of it when

the State asked her about it.7 T.F. indicated that she never would have allowed Minor around her

kids if she had known about his juvenile adjudication for statutory sodomy. T.F. testified that she

knew Minor came from a bad upbringing, and that she nevertheless trusted Minor – perhaps

because she met him at church. T.F. indicated that she had considered terminating her pregnancy

prior to L.W.’s allegations; that L.W.’s allegations led her to terminate her pregnancy; that T.F.

 7
 The result of Minor’s prior juvenile adjudication was later admitted into evidence as propensity evidence
directly prior to the close of the State’s evidence.

 9
did not want a baby by a man that did that to her daughter; and that, if the baby had resembled

Minor, it would bring back “so much hurt.” T.F. said that she ultimately reported L.W.’s

allegations to the police; that she screamed at Minor over the phone asking how he could do that

to her daughter; and that Minor denied doing anything to L.W. T.F. testified that Minor had

introduced her to Child’s mother, and that she was aware that Child’s mother had children with

Minor. T.F. complained that she had to miss a lot of work in conjunction with court cases related

to L.W.’s allegations; and that being involved in the instant court proceedings was inconvenient,

but that T.F. had to “get justice” for her daughter, L.W.8

 The first day of trial testimony concluded after the State’s direct examination of T.F.;

included no testimony regarding the crimes charged in the instant action; and was instead

entirely comprised of evidence related to the prior criminal act described by L.W. At the

beginning of the second day of trial testimony, the trial court took up the issue of the State’s

other witnesses regarding the prior criminal act alleged by L.W. (including a detective that

investigated the abuse reported by L.W.). The trial court expressed its concern as to how that

witness’s testimony would be relevant to the case the court was trying, which involved the

charged offenses against Child. The State replied that the additional evidence regarding the

investigation of L.W.’s allegations was relevant to the offenses against Child because Minor had

not been found guilty of (or pled guilty to) the conduct alleged by L.W. The trial court replied:

 Right. But how is her investigation – I allowed, and the Constitution allows, I
 allowed the propensity evidence, which quite frankly, I believe was [L.W.] and
 [M.W.] because [M.W.] may have been an eyewitness.

 I’ve got to tell you in full disclosure, had I known ahead of time [T.F.]’s testimony,
 there was probably substantial parts of it that I find not relevant, because it’s not

 8
 All of the above testimony provided by T.F. was elicited on direct examination prior to defense counsel’s
cross-examination of T.F.

 10
 propensity evidence, it’s the investigation and follow-up of propensity evidence,
 which is really trying two cases in one. And I don’t believe that’s what the
 Constitution allows.

 The trial court indicated that it would not prohibit the State from calling the additional

witness, but informed the State that the subject matter that could be discussed would be very

limited. The trial court continued:

 This is really in full disclosure of that. I’m not going to allow her to testify as to
 her investigation, because it’s not relevant to this case. The propensity evidence
 has been put before the jury. The propensity evidence was the testimony of [L.W.].
 And the Constitution and I found that that was allowable.

 ….

 I would agree that some of the things – I said some of the things [T.F.] testified to
 – some of the things [T.F.] testified to would be allowed under propensity evidence.
 [Minor] had access to the children in a time in which [T.F.] was either not home or
 incapacitated. Agreed.

 ….

 Part of the reason is, I don’t believe it’s relevant to the issues before this jury. I
 think it’s confusing to the jury. I think again that [L.W.] and [M.W.] were the
 propensity evidence. Perhaps a small portion of [T.F.]’s testimony was propensity
 evidence.

 But we’re not trying the [L.W.] case, we’re trying the [charged offenses], and I’m
 concerned that we’re heading way too far down the rabbit hole of the other case.

 At that point, Defense counsel indicated that the defense planned to call as a witness the

CPC interviewer regarding inconsistent statements that L.W. made. The Court replied:

 As I thought about this, I understand that letting [L.W.] take the stand opens the
 door to you putting on a defense, and I’m not saying that at this point that I’m not
 going to allow you to do that. I understand that 18(c) can’t simply say that the
 prosecutor gets to put three children on the stand and then you don’t get any way
 of calling a witness to rebut that. Okay? But I am saying, I don’t believe that 18(c)
 allows us to go further than how we’ve gone, let’s put it that way. Okay?

 11
The trial court instructed the parties that it would take up issues regarding the State’s additional

evidence relating to L.W.’s allegations at the morning break, and further indicated:

 My concern is that we’ve gone far enough, as I have said, if not too far down that
 rabbit hole. So we will take this up at the break before [the detective] is called. But
 I will tell you that my inclination at this point is to not allow her to testify.

The second day of trial testimony then began with the defense’s cross-examination of T.F.9

 Immediately before the close of the State’s evidence, the State presented propensity

evidence to establish that Minor committed a prior criminal act against D.J. The State read to the

jury portions of the Petition in Minor’s prior juvenile adjudication (Exhibit 1) which indicated

that, when Minor was fifteen years old (in September of 2000), he had committed an act that

would have constituted first-degree statutory sodomy if committed by an adult, by having deviate

sexual intercourse with D.J., who was eight years old at the time of the act. From the Findings

and Recommendations in the juvenile adjudication (Exhibit 2), the State read to the jury that

Minor admitted the allegations, and that the family court found that the evidence adduced was

sufficient to sustain the allegations in the Petition.

 Article I, section 18(c)’s balancing test

 Article I, section 18(c) of the Missouri Constitution provides:

 9
 Subsequently at trial, after the State had called witnesses with respect to Child’s initial disclosure, the trial
court addressed whether it would allow the State to call as a witness the detective involved in the investigation of
L.W. The trial court stated:

 The Court has looked at the Bill of Rights, Article 1 of the Missouri Constitution, Section 18(c) with
 regard to the propensity evidence, and the Court believes that the propensity evidence has been
 satisfied in this matter by the evidence of [L.W.] and [M.W.], and as I said earlier on the record, that
 [T.F.] probably even pushed the boundaries of what I would have considered to be the propensity
 evidence but I allowed it.

 Nonetheless, the Court finds that [the detective]’s investigation of the propensity evidence is beyond
 the scope of what is contemplated by 18(c); and therefore, the Court is not going to allow the State
 to call her as a witness in this matter.

 12
 Notwithstanding the provisions of section 17 and 18(a) of this article to the
 contrary, in prosecutions for crimes of a sexual nature involving a victim under
 eighteen years of age, relevant evidence of prior criminal acts, whether charged or
 uncharged, is admissible for the purpose of corroborating the victim’s testimony or
 demonstrating the defendant’s propensity to commit the crime with which he or she
 is presently charged. The court may exclude relevant evidence of prior criminal
 acts if the probative value of the evidence is substantially outweighed by the danger
 of unfair prejudice.

 Prior to the adoption of this amendment in 2014, Missouri courts had regularly held that a

“finding of legal and logical relevance will never provide a basis for the admission of prior

criminal acts evidence for the purpose of demonstrating a defendant’s propensity.” See State v.

Ellison, 239 S.W.3d 603, 607 (Mo. banc 2007) (emphasis in original) (holding abrogated by

constitutional amendment).10 Article I, section 18(c) was adopted with the purpose of abrogating

Ellison’s holding with respect to prosecutions for crimes of a sexual nature involving a victim

under the age of eighteen. Williams, 548 S.W.3d at 280. Thus, after the adoption of the

amendment, relevant evidence of prior criminal acts became potentially admissible for the

purpose of demonstrating the defendant’s propensity to commit a charged offense. Mo. Const.

art. I, § 18(c).

 In rejecting an argument that article I, section 18(c) violated the federal Due Process

Clause, the Missouri Supreme Court looked to an “unbroken line of federal decisions” that held

that Rule 414 of the Federal Rules of Evidence did not violate due process because it was subject

to the constitutional safeguards of Rule 403, the application of which requires the exclusion of

evidence when its danger of unfair prejudice substantially outweighs its probative value such that

 10
 Ellison’s holding was based in part on article I, sections 17 and 18(a) of the Missouri Constitution.
Given that article I, section 18(c) operates “[n]otwithstanding the provisions of section 17 and 18(a) of [article I of
the Missouri Constitution] to the contrary,” those provisions of the Missouri Constitution no longer limit the
admissibility of propensity evidence under the circumstances expressly provided in article I, section 18(c).

 13
the defendant is deprived of a fair trial. Williams, 548 S.W.3d at 284-86. Construing article I,

section 18(c) consistently with the uniform construction given to federal Rule 403, from which

the language of the second sentence of article I, section 18(c) was adopted, Williams concluded

that the application of the balancing test in the second sentence of the amendment preserved

article I, section 18(c)’s validity against facial Due Process Clause challenges. Id. at 285-86

(“Based upon Lemay11 and the other federal decisions, therefore, this Court rejects Williams’s

claim that article I, section 18(c) violates federal due process on its face.”) (footnote added).

Despite the fact that article I, section 18(c) states that the court “may” “exclude relevant evidence

of prior criminal acts if the probative value of the evidence is substantially outweighed by the

danger of unfair prejudice[,]” the application of this balancing test is nevertheless mandatory.

Williams, 548 S.W.3d at 285 n. 11 (“Because the second sentence of article I, section 18(c) is

taken word-for-word from Rule 403 [of the Federal Rules of Evidence], this Court is bound to

give that language the same mandatory construction it received prior to adoption here.”).

 As a consequence of the adoption of article I, section 18(c), evidence of prior criminal

acts is no longer categorically inadmissible for the purpose of establishing the defendant’s

propensity to commit a charged offense. With respect to the circumstances enumerated in article

I, section 18(c), such evidence is potentially admissible, but nevertheless must be excluded when

its danger of unfair prejudice substantially outweighs its probative value. Williams, 548 S.W.3d

at 288. Although article I, section 18(c) clearly allows the factfinder to draw an inference of

propensity upon a finding that the defendant committed a similar prior criminal act, the dangers

of unfair prejudice surrounding propensity evidence were never limited to the concern that the

 11
 United States v. LeMay, 260 F.3d 1018 (9th Cir. 2001).

 14
jury would infer that, because the defendant committed a similar prior criminal act, the defendant

was more likely to have committed a charged offense. See Williams, 548 S.W.3d at 290-91

(continuing to recognize the dangers of unfair prejudice that the jury may convict to punish a

defendant for past acts rather than charged offenses or that the jury may convict the defendant

because he is a “bad” or “wicked” man). Although the amendment clearly dispenses with the

categorical rule barring evidence offered for a propensity purpose, it did not dispense with the

dangers well recognized to accompany such evidence. Even after the amendment, it is still

impermissible for the jury to convict to punish the defendant for a prior uncharged act or because

of the defendant’s general character. Id.

 Those risks of prejudice are present not only when the evidence is offered to show
 propensity, but whenever a defendant’s prior bad acts are admitted. Whenever such
 evidence is before the jury, the jury may be tempted to convict for the prior bad act,
 or what it says about the defendant’s character, rather than what it says about the
 likelihood that the defendant committed the charged crime.

United States v. Castillo, 140 F.3d 874, 882 (10th Cir. 1998). That is, there is always a danger of

unfair prejudice, even when propensity evidence may properly be admitted. See LeMay, 260

F.3d at 1031 (“We emphasize . . . that evidence of a defendant’s prior sex crimes will always

present the possibility of extreme prejudice[.]”). The danger of unfair prejudice may be more or

less severe depending on the circumstances of a particular case, but it is always present.

Consequently, propensity evidence generally requires a significant level of probative value to

withstand the application of article I, section 18(c)’s balancing test. See Old Chief v. United

States, 519 U.S. 172, 181 (1997) (“Although . . . propensity evidence is relevant, the risk that a

jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict

anyway because a bad person deserves punishment—creates a prejudicial effect that outweighs

ordinary relevance.”) (quotations omitted).

 15
 At the same time, the Missouri Supreme Court has recognized that article I, section 18(c)

carries a “relaxed” legal relevance test such that propensity evidence will not be excluded simply

because the danger of unfair prejudice outweighs its probative value. Prince, 534 S.W.3d at 819.

Rather, propensity evidence must be excluded only when the danger of unfair prejudice

substantially outweighs the probative value of the propensity evidence. Id.

 Generally, for evidence to be admissible, it must have logical and legal relevance. State

v. Anderson, 76 S.W.3d 275, 276 (Mo. banc 2002). “Evidence is logically relevant if it tends to

make the existence of a material fact more or less probable.” Id. That is, logical relevance looks

to whether the evidence has any probative value, which has regularly been described as “a very

low-level test that is easily met.” See Prince, 534 S.W.3d at 819 (quotation omitted).

 Legal relevance weighs the probative value of the evidence against the danger of unfair

prejudice that results from its admission. Anderson, 76 S.W.3d at 276. In assessing the legal

relevance of evidence, it is obvious that various items of logically relevant evidence will have

varying probative values. Assessing legal relevance requires the court to look, not just to

whether evidence has any tendency to prove a material fact, but how much or what kind of a

tendency such evidence has, and in doing so, to weigh that probative value against the danger of

unfair prejudice that accompanies the admission of the evidence. See Williams, 548 S.W.3d at

288.

 For propensity evidence to have legal relevance under article I, section 18(c), “the

probative value of the evidence [must not be] substantially outweighed by the danger of unfair

prejudice.” Mo. Const. article I, § 18(c); Williams, 548 S.W.3d at 288. In this context, unfair

prejudice has been defined to mean “an undue tendency to suggest decision on an improper

 16
basis, commonly, though not necessarily, an emotional one.” Advisory Committee’s Notes on

Fed. Rule Evid. 403.

 In Williams, the Missouri Supreme Court determined that a stipulation based on the

defendant’s prior guilty plea was admissible for the purpose of demonstrating the defendant’s

propensity to commit an offense with which the defendant was charged. Williams, 548 S.W.3d at

293. In drawing this conclusion, Williams noted that “[t]he determination of how much and what

kind of probative value particular propensity evidence may have, the nature and extent of the

danger of unfair prejudice presented by that evidence, and whether the former is substantially

outweighed by the latter, are intensely case-specific questions.” Id. at 288. With this principle in

mind, Williams identified a number of factors bearing on its analysis of the probative value and

prejudicial dangers of the evidence admitted, while cautioning that the factors addressed in

Williams were “merely illustrative of the legal relevance analysis article I, section 18(c)

requires.” Id.

 For propensity evidence to have any probative value, “it must be sufficient for the jury to

conclude the defendant actually committed the prior criminal act.” Williams, 548 S.W.3d at 288

(citing Huddleston v. United States, 485 U.S. 681, 689 (1988)). 12 Similarly, to have probative

value, the defendant’s commission of the prior criminal act “must tend to show the defendant

 12
 Williams stated that “[b]efore propensity evidence can be said to have any probative value, it must be
sufficient for the jury to conclude the defendant actually committed the prior criminal act.” Williams, 548 S.W.3d at
288 (citing Huddleston v. United States, 485 U.S. 681, 689 (1988)). Given Williams’s citation to the conditional
relevance standard delineated in Huddleston, this proposition refers to whether the evidence examined as a whole is
sufficient for the factfinder to conclude the defendant committed the prior criminal act, rather than whether each
individual item of evidence is itself sufficient for the jury to conclude the defendant committed the prior criminal
act. See id.; see also Huddleston, 485 U.S. at 691 (“The sum of an evidentiary presentation may well be greater than
its constituent parts.”) (quotation omitted). Although there is nothing directly prohibiting the introduction of
multiple items of propensity evidence or introducing multiple witnesses to offer propensity evidence, the longer the
prosecution spends establishing the defendant’s prior criminal act rather than the charged offenses, and the more
detailed the testimony establishing the prior criminal act, the greater the danger of unfair prejudice.

 17
actually had a propensity to commit the charged crime at the time it is alleged to have occurred.”

Id. at 289. Williams addressed this tendency to show actual propensity in terms of whether an

inference of propensity would be proper based upon the relationship between the prior criminal

act and the charged offense, an inquiry that typically considers the similarity between the prior

criminal act and the charged offense as well as the temporal relationship between the two acts.

Id. Williams further acknowledged that the probative value of a particular item of propensity

evidence may be affected by the prosecution’s need for propensity evidence to prove the charged

offenses for which the defendant is on trial. Id.

 In conducting article I, section 18(c)’s balancing test, Williams identified a number of

factors bearing on the danger of unfair prejudice of propensity evidence: (1) whether the jury

knows or can infer that the defendant was punished for the past criminal act; (2) the manner in

which the state proves the past act; (3) whether evidence of the past act is out of proportion to the

currently charged offense; and (4) the manner of use of the propensity evidence at trial. Williams,

548 S.W.3d at 290-91. If the probative value of the propensity evidence is substantially

outweighed by the danger of unfair prejudice, it must be excluded. Id. at 288.

 L.W.

 With respect to the propensity evidence admitted to establish Minor’s prior criminal act

against L.W., Minor argues that such evidence was substantially more prejudicial than probative,

violating his right to a fair trial and to due process under the Sixth and Fourteenth Amendments.

More specifically, he argues that the testimony admitted had little probative value, that the

testimony was lengthy, detailed, not dispassionate, and left the jury to speculate whether Minor

had been punished for the alleged crime for which he was not on trial. We agree in part.

 18
 We find that some of the propensity evidence could have been properly admitted to

establish that Minor had committed a prior criminal act against L.W. In particular, L.W.’s

testimony had a significant probative value such that it would not have been substantially

outweighed by the danger of unfair prejudice but for the expansive additional testimony

admitted. However, the amount of additional propensity evidence admitted included expansive

and detailed testimony with little or no tendency to establish that Minor had committed a prior

criminal act against L.W. This evidence carried a danger of unfair prejudice that substantially

outweighed its probative value.

 With respect to L.W.’s testimony, her testimony had significant probative value. If the

propensity evidence admitted to establish that Minor had committed a prior criminal act against

L.W. had been limited to L.W.’s testimony, we would find no abuse of discretion. From L.W.’s

testimony alone, the State presented sufficient evidence from which the jury could find that

Minor committed a prior criminal act against L.W. Upon finding that Minor had committed a

prior criminal act against L.W., the jury could properly draw an inference of Minor’s propensity

to commit the charged offenses given the similarity between the act described by L.W. and the

charged offenses against Child, as well as the relatively short time span separating the prior and

charged acts. With respect to whether the State had a practical need for presenting propensity

evidence to prove that Minor committed the charged offenses against Child, we find the State

had an appreciable need for propensity evidence. As is often the case in trials for sexual abuse

against children, the State’s case was largely based on the testimony of the victim of the charged

offenses (Child), and the other witnesses were generally only able to testify to Child’s

disclosures of the abuse. See Williams, 548 S.W.3d at 289-90. Accordingly, the State had an

 19
appreciable need to present propensity evidence, which enhanced the probative value of the

propensity evidence in general.

 However, merely because some propensity evidence (that is highly probative of whether

the defendant committed a similar, prior criminal act) may be admitted, it does not follow that all

evidence with any tendency to establish the defendant’s commission of a prior criminal act

should be viewed as having equivalent probative value. Put another way, not all evidence that

might be admissible in a case in which a defendant is on trial for a criminal act (e.g., if Minor

were being prosecuted for his alleged act against L.W.) is admissible in a case in which the

defendant is not on trial for the prior criminal act (as in the current case, when such evidence is

offered only for the purpose of showing Minor’s propensity to commit the charged offenses

against Child).

 Williams addressed propensity evidence relating to a prior criminal act to which the

defendant had previously pled guilty, and the evidence at issue in Williams took the form of a

stipulation that was read to the jury. 548 S.W.3d at 289. In this matter, Minor’s “prior criminal

act” against L.W. had not been previously adjudicated, and Minor disputed whether the act

occurred. Consequently, in order to establish Minor’s commission of the prior criminal act

against L.W., the State did not have available a prior finding or plea of guilt. Instead, it

introduced the detailed in-person testimony of L.W., seeking to establish that Minor committed

the prior criminal act against L.W. As stated above, L.W.’s testimony alone was sufficient for the

jury to find that Minor committed the prior criminal act described by L.W. and for the jury to

draw an inference regarding Minor’s propensity to commit the charged offenses against Child.

The State then continued to introduce propensity evidence in the form of M.W.’s and T.F.’s

testimony. While the additional testimony was far less probative of whether Minor had

 20
committed the act described by L.W. than L.W.’s testimony, the danger of unfair prejudice that

always accompanies propensity evidence continued to increase.

 When evidence that a defendant committed a prior criminal act is introduced in multiple

and varying forms, an assessment of the various evidence’s probative value must be made when

considering its admission, particularly where some of the evidence (in this instance M.W.’s and

T.F.’s testimony) is cumulative to, and less probative than, the threshold evidence (L.W.’s

testimony) that was already admitted and sufficient to support a finding that the past abuse had

occurred. See Williams, 548 S.W.3d at 288 (recognizing that article I, section 18(c)’s legal

relevance test includes “[t]he determination of how much and what kind of probative value

particular propensity evidence may have”); see also Huddleston, 485 U.S. at 689 n.6 (“We do . . .

agree with the Government’s concession at oral argument that the strength of the evidence

establishing the similar act is one of the factors the court may consider when conducting the Rule

403 balancing.”). As a self-evident proposition, not all evidence that is introduced to establish

that the defendant committed a prior criminal act will have the same tendency to establish the

act’s commission. Simply because an inference of propensity may be proper upon a finding that

the defendant committed the prior criminal act, it does not follow that evidence with little

tendency to establish the prior act’s commission should be viewed as having the same degree of

probative value as evidence with a high tendency to establish the defendant’s commission of the

prior criminal act.

 In assessing the probative value of the propensity evidence admitted in this case, we

reiterate that the testimony of L.W. was clearly probative of whether Minor committed a prior

criminal act against L.W.; and, due to the similarity and proximity in time between the act

described by L.W. and the acts described by Child, the jury could properly consider Minor’s

 21
propensity to commit the charged offenses against Child upon a finding that Minor committed

the prior criminal act against L.W.

 However, the remainder of the evidence introduced to establish that Minor committed a

prior criminal act against L.W. had a significantly reduced tendency to establish that Minor

committed the prior criminal act against L.W. M.W.’s testimony did have a degree of probative

value, as M.W. testified to his personal knowledge regarding an event that he witnessed. While

his testimony was limited as to precisely what occurred, and could not, by itself, establish that

Minor committed a prior criminal act against L.W., it was eyewitness testimony that, when

considered in conjunction with L.W.’s testimony, certainly had some tendency to make it more

likely that Minor had committed the prior criminal act against L.W.

 T.F. testified that Minor was occasionally alone with L.W., and that, on one occasion, T.F.

slept in the living room of her home (a detail consistent with L.W.’s testimony that T.F. was in

the living room on the night she was abused). T.F.’s remaining testimony had little tendency to

establish Minor’s commission of the prior criminal act. Nevertheless, the State elicited

expansive additional testimony from T.F. despite its limited probative value on this issue. While

much of her testimony may have been probative of whether T.F. believed Minor had committed

the act, or what T.F. did in response to the allegations, it had very little tendency (and in some

instances no tendency) to establish that Minor had in fact committed the act described by L.W.

The trial court itself recognized that very little of T.F.’s testimony was proper propensity

evidence.

 On the other side of legal relevance’s scale, the danger of unfair prejudice (of punishing

Minor for his past criminal conduct or his bad character) that accompanied the expansive

 22
propensity evidence admitted was considerable. In conducting article I, section 18(c)’s

balancing test, Williams identified a number of factors bearing on the danger of unfair prejudice:

 (1) “whether the jury knows or can fairly infer [that] the defendant was punished
 for [the] past criminal acts”;

 (2) “the manner in which the state proves the prior criminal act at trial”;

 (3) “whether the evidence of the defendant’s prior criminal act eclipses—or is
 overshadowed by—the evidence of the charged crime”; and

 (4) “the manner in which the state uses the evidence at trial.”

Williams, 548 S.W.3d at 290-91.

 In addressing the first factor, the Williams court observed: “If the jury is allowed to infer

(or, worse, speculate) the defendant escaped punishment in the past, it may be inclined to convict

merely to punish the defendant for past criminal acts rather than for the crime charged.” Id. at

290. In this matter, the jury was not merely left to speculate whether Minor had been punished

for the act against L.W. T.F.’s testimony that she was there seeking justice for her daughter

suggested the jury could provide justice for the act against L.W. in this proceeding in which

Minor was not on trial for that act. The record not only makes it clear that the jury was invited to

consider punishment for Minor’s past abuse of L.W., it also indicates that the jury did, in fact,

consider whether Minor had been punished for his abuse of L.W. The jury’s first question to the

trial court after the jury began its deliberations was: “Are there charges against defendant

regarding [L.W.]?”

 Addressing Williams’s second factor, in State v. Brown, 596 S.W.3d 193, 210 (Mo. App.

W.D. 2020), our court indicated: “Unfair prejudice may also ‘be a function of the manner in

which the state proves the prior criminal act at trial.’” Id. (quoting Williams, 548 S.W.3d at 290).

“[A]llowing the State to prove the defendant’s prior uncharged crime by calling his former

 23
victim, who speaks of the prior crime firsthand, increases the danger of unfair prejudice.” State

v. Banks, 582 S.W.3d 919, 926 (Mo. App. E.D. 2019) (citing Williams, 548 S.W.3d at 290).

Lacking a criminal conviction or some other dispassionate record of the past abuse of L.W. by

Minor, the State elicited the testimony of L.W. to apprise the jury of Minor’s prior criminal

conduct – testimony that, in and of itself, had an increased risk of prejudice. Id. The State

nevertheless continued to elicit testimony from additional witnesses – testimony that had a

diminishing (or no) tendency to prove that L.W. had been abused; and in doing so, exacerbated

the danger of unfair prejudice, which in this case became untenable.

 Addressing Williams’s third factor (whether the evidence of the defendant’s prior

criminal conduct is out of proportion to the currently charged crime), the entire first day of trial

testimony solely addressed the past abuse of L.W., not the charged offenses. The first question

from the jury addressed whether Minor had been charged for the abuse alleged by L.W. Clearly,

the focus of the testimony, and of the jury, was inordinately drawn toward the prior criminal

conduct.

 The manner in which the State used the propensity evidence (Williams’s fourth factor)

likewise enhanced the prejudicial impact of the propensity evidence. The State increased the

danger of unfair prejudice in its closing argument when it referred to Minor as “a serial child

sodomizer,” and, more than once referred to his acts as a “reign of terror.” Such comments are

not tailored to address the permitted purpose of considering Minor’s past conduct (his propensity

to do it again). Rather, these inflammatory comments were addressed to Minor’s general

character. See Brown, 596 S.W.3d at 212 (finding the State’s repeated references to the

defendant as a “pedophile” based on propensity evidence to increase the danger of unfair

prejudice). In conducting its analysis regarding the prejudicial impact of propensity evidence,

 24
the Missouri Supreme Court in Williams expressly considered the State’s limited use of the

propensity evidence during closing argument (in finding no prejudice). Williams, 548 S.W.3d at

292. Unlike Williams, in this instance, we find that the State’s inflammatory statements in its

closing arguments enhanced the prejudicial impact of the propensity evidence that had been

admitted.13

 In that much of T.F.’s testimony had little or no probative value as to whether Minor

committed the prior criminal act against L.W.; in that the portions of M.W. and T.F.’s testimony

that were probative of whether Minor committed the prior act were largely cumulative to the

testimony of L.W. and thus had diminished probative value; and in that the danger of unfair

prejudice was increased upon consideration of all four factors set forth in Williams, we conclude

that the probative value of the propensity evidence admitted was substantially outweighed by the

danger of unfair prejudice resulting from the admission of the testimony of M.W. and L.W.14

 13
 Though we do not address Minor’s second point on appeal which posited that the trial court erred in
overruling his objections to the prosecutor’s statements in closing argument, we do note that the State’s closing
argument did exacerbate the prejudicial impact of the propensity evidence admitted by the State; and in accordance
with Williams’s fourth factor, we consider that impact in determining whether the trial court erred in admitting said
propensity evidence.
 14
 The concurring opinion seems to conclude that each individual item of propensity evidence must by itself
be sufficient to establish that the defendant committed the “prior criminal act” in order to “demonstrate” the
defendant’s propensity to commit a charged offense. However, that conclusion would be contrary to the conditional
relevance standard, which the Missouri Supreme Court in Williams indicated was applicable to the threshold
determination of whether the evidence is sufficient for the jury to conclude that the defendant committed the prior
criminal act. Williams, 548 S.W.3d at 288 (citing Huddleston, 485 U.S. at 689). Based on that standard, the sum of
the evidence relevant to the defendant’s commission of the prior criminal act must be sufficient for the jury to
conclude that the defendant committed the prior criminal act. Huddleston, 485 U.S. at 691. Once the evidence is
sufficient for the jury to conclude that the defendant committed the prior criminal act, whether the evidence tends to
show (demonstrates) the defendant had a propensity to commit the charged offenses hinges on the nexus (the
similarity of offenses and time elapsed since the prior criminal act) between the prior criminal act and the charged
offenses – i.e., whether an inference of propensity is proper upon a finding that the defendant committed the prior
criminal act. Williams, 548 S.W.3d at 289. Section 18(c)’s use of the term “demonstrate” does not relate to the type
of evidence that may be relevant to proving the prior criminal act, but rather the purpose of the evidence. Whether
relevant evidence of prior criminal acts may satisfy the purpose of “demonstrating” a defendant’s propensity relates
to the nexus between the prior act and the charged offenses (whether an inference of propensity is proper given the
similarity of the offenses and the time elapsed since the past criminal act), rather than the degree to which the item
of evidence “demonstrates” the defendant’s commission of the prior criminal act.

 25
 On direct appeal, we review “for prejudice, not mere error, and will reverse only if the

error was so prejudicial that it deprived the defendant of a fair trial.” Prince, 534 S.W.3d at 818.

Although we express no opinion regarding the credibility of any witness at trial, the evidence

regarding Minor’s charged offenses revealed that Child’s account of events changed significantly

throughout the years leading up to trial. The defense presented testimony from Child’s great-

grandmother (Minor’s grandmother) who had previously had custody of Child for approximately

a year. Child’s great-grandmother testified that, on an earlier occasion,15 Child had approached

her in tears and disclosed that Child’s mother had instructed Child to falsify allegations against

Minor because Child’s mother was angry that Minor had been unfaithful and impregnated

another woman. After carefully reviewing the evidence admitted at trial and the breadth of the

improperly admitted propensity evidence, we find that the improperly admitted evidence

deprived Minor of a fair trial, Prince, 534 S.W.3d at 818, and that “there is a reasonable

probability that the trial court’s error affected the outcome of the trial.” Zink, 181 S.W.3d at 73.

Accordingly, Minor’s first point on appeal is granted in part; and reversal is warranted.

 Put another way, to the extent that the testimony of M.W. and T.F. was probative of whether Minor
committed the prior criminal act against L.W, it was logically relevant on the issue of whether Minor had committed
the prior criminal act. And, whether “relevant evidence of prior criminal acts” may satisfy the purpose of
demonstrating the defendant’s propensity hinges on the nexus between the prior criminal act and the charged
offenses. Accordingly, to the extent that the testimony of M.W. and T.F. was probative of whether Minor
committed the prior criminal act, their testimony was not automatically inadmissible as a threshold matter, given
that such evidence was still offered for the purpose of demonstrating Minor’s propensity to commit the charged
offenses. And, upon a finding that Minor had committed the act alleged by L.W., an inference of propensity could
properly be drawn by the jury due to the similarity and proximity in time between the act alleged by L.W. and the
charged offenses against Child. Rather than being inadmissible as a matter of purpose, the admissibility of their
testimony is governed by the legal relevance test set forth in article I, section 18(c). Although we ultimately reach
the same result as the concurring opinion, we find that the bright line rule set forth in that opinion is not supported
by the language of article I, section 18(c).
 15
 Child’s great-grandmother’s testimony related to an event occurring prior to the allegations in this case.

 26
 Juvenile Adjudication

 Minor also argues that the trial court erred in admitting propensity evidence with respect

to his prior juvenile adjudication. In particular, Minor argues that his prior criminal act was too

remote in time, occurred while Minor was a juvenile, and the form of the evidence presented to

the jury was lacking in such detail that the jury could not properly assess Minor’s propensity. We

disagree.

 Minor’s prior juvenile adjudication had probative value as to Minor’s propensity to

commit the charged offenses. Unlike with prior criminal acts that have not previously been

adjudicated, Minor had previously been adjudicated to have committed acts constituting first-

degree statutory sodomy. The family court’s findings were based on Minor admitting the facts

necessary to sustain the allegations. Accordingly, the jury could conclude that Minor had

committed an act of first-degree statutory sodomy based on the evidence presented.

 Although Minor’s prior criminal act against D.J. occurred in 2000, over a decade prior to

the charged offenses that were alleged to have occurred, “an inference of propensity might be

proper notwithstanding a significant time lapse between the prior crime and the charged crime if

the two crimes are highly similar.” Williams, 548 S.W.3d at 289. In this matter, the jury could

infer that Minor had a propensity to commit first-degree statutory sodomy against a seven-year-

old girl in 2013 from the fact that Minor had previously admitted to committing acts constituting

first-degree statutory sodomy against an eight-year-old girl in 2000. Although the prior act

occurred while Minor was a juvenile, acts committed as a juvenile are not inadmissible as

propensity evidence simply because of the defendant’s prior status as a juvenile. See Prince, 534

S.W.3d at 820-21.

 27
 The evidence was presented by way of a brief, dispassionate reading to the jury from the

Petition (Exhibit 1) and Findings and Recommendations (Exhibit 2) from Minor’s prior juvenile

adjudication. At Minor’s request, the trial court instructed the State to redact portions of those

documents to remove references regarding sentencing and disposition, and those portions were

redacted prior to being read to the jury.16 Given the probative value of the evidence, and its brief

and dispassionate admission at trial, the probative value of the evidence was not substantially

outweighed by the danger of unfair prejudice accompanying its admission.

 The trial court did not abuse its discretion in admitting propensity evidence of Minor’s

prior juvenile adjudication regarding his past abuse of D.J.

 Point Three (Sufficiency of the Evidence Challenge)

 In his third point on appeal, Minor contends that the evidence was insufficient to support

his convictions for first-degree statutory sodomy (Count V) and a related incest charge (Count

VI) because the evidence failed to establish that Minor’s penis contacted or penetrated Child’s

anus as alleged. Although we would reverse these convictions and remand for a new trial on all

counts, we are also compelled to address Minor’s challenge to the sufficiency of the evidence on

Counts V and VI due to double jeopardy considerations. See State v. Feldt, 512 S.W.3d 135, 154

(Mo. App. E.D. 2017).

 16
 To the extent that Minor argues that the form of the evidence was improper due to containing too little
information about the facts underlying Minor’s adjudication for first-degree statutory sodomy, the redactions to the
exhibits were performed at Minor’s request. “Ordinarily, a party cannot complain on appeal about a procedure
adopted in the trial court at his or her own request, nor may an appellant complain of alleged error, which by such
person’s conduct at trial, he or she joined in or acquiesced or invited.” State v. Pickens, 332 S.W.3d 303, 319 n.14
(Mo. App. E.D. 2011) (quoting Carter v. St. John’s Reg’l Med. Ctr., 88 S.W.3d 1, 19 (Mo. App. S.D. 2002)).
Initially, the State had sought to also introduce details from the statement of probable cause, which indicated that
D.J., then eight years old, reported that Minor (who was then fifteen) had been visiting her home when he pulled
D.J. into a bathroom, where he pushed her down, pulled his penis from his pants, and pushed his penis into her
mouth while pushing her head back and forth. Because the factual details underlying the juvenile adjudication were
limited at Minor’s request, Minor cannot now complain that the jury was not presented with enough detail regarding
the conduct underlying the juvenile adjudication.

 28
 In evaluating whether sufficient evidence supports a conviction, our review “is limited to

determining whether there is sufficient evidence from which a reasonable jury could have found

the defendant guilty beyond a reasonable doubt.” State v. Knox, 604 S.W.3d 316, 319 (Mo. banc

2020) (quoting State v. Porter, 439 S.W.3d 208, 211 (Mo. banc 2014)). In making this

determination, “this Court does not weigh the evidence but, rather, accepts as true all evidence

tending to prove guilt together with all reasonable inferences that support the verdict, and ignores

all contrary evidence and inferences.” State v. Naylor, 510 S.W.3d 855, 858-59 (Mo. banc 2017)

(internal quotations, brackets, and citation omitted). “This is not an assessment of whether this

Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a

question of whether, in light of the evidence most favorable to the State, any rational fact-finder

‘could have found the essential elements of the crime beyond a reasonable doubt.’” Id. at 859

(quoting State v. Nash, 339 S.W.3d 500, 509 (Mo. banc 2011)).

 Minor’s evidentiary challenges regarding Counts V and VI are both based on his

contention that the evidence was insufficient to establish that Minor engaged in deviate sexual

intercourse with Child, as found by the jury in Counts V (first-degree statutory sodomy) and VI

(incest). See §§ 566.062 & 568.020 RSMo Cum. Supp. 2006. At the time the act was alleged to

have occurred, “Deviate sexual intercourse” was defined as:

 [A]ny act involving the genitals of one person and the hand, mouth, tongue, or anus
 of another person or a sexual act involving the penetration, however slight, of the
 male or female sex organ or the anus by a finger, instrument or object done for the
 purpose of arousing or gratifying the sexual desire of any person or for the purpose
 of terrorizing the victim[.]

§ 566.010(1) RSMo Cum. Supp. 2006. Thus, to establish that Minor had engaged in deviate

sexual intercourse, it was not necessary for the evidence to establish that Minor penetrated

Child’s anus. See, e.g., Soto v. State, 226 S.W.3d 164, 166 (Mo. banc 2007) (noting the

 29
distinction within the definition of “deviate sexual intercourse” between “contact sodomy” and

“penetration sodomy”).

 Minor’s arguments regarding the insufficiency of the evidence to establish penetration are

based on a discrepancy between the language of the original indictment and the language of an

information in lieu of indictment that the State was granted leave to file but which was never

filed in the court’s electronic file. In the original indictment, Counts V and VI alleged that Minor

had deviate sexual intercourse with Child by penetrating her anus with his penis. During trial,

the State sought leave to file an information in lieu of indictment that amended the language of

the charges from penetration to touching.17 The record indicates that the language of the

amended information was before the trial court when the trial court took up the State’s motion.

The trial court found that the proposed amended information alleged no additional or different

offense than was charged in the original indictment, and that allowing the State to amend the

charging document would not prejudice Minor. The jury was instructed in accordance with the

language in the amended information as discussed in the record.

 Minor argues that, as a result of the State’s failure to actually file an amended

information, the State was bound by the language of the original charging document. Minor did

not, however, raise any claims below or on appeal challenging the State’s failure to electronically

file the amended information. Instead, both parties and the court treated the matter as if the State

had filed the amended information. Minor lodged no objection to the verdict directors that used

language indicating touching rather than penetration. Minor also submitted converse instructions

 17
 The initial indictment alleged that Minor had deviate sexual intercourse “by placing his penis in [Child]’s
anus.” Based on the trial court’s comments when addressing the State’s motion, the amended information alleged
that Minor had deviate sexual intercourse by “touching [Child]’s anus with his penis.” The jury instruction given at
trial mirrored the language of the amended information as referenced by the trial court.

 30
using the same amended language. Thus, to the extent Minor’s third point on appeal challenges

the State’s failure to file the amended information, that claim is waived. See State v. Bolden, 371

S.W.3d 802, 806 (Mo. banc 2012) (“[T]he proffering of an incorrect instruction to the trial court

is an invited error by the party who proffered the instruction.”).

 Minor alternatively argues that the evidence was insufficient to establish that Minor’s

penis touched Child’s anus. We disagree.

 Generally, “[e]vidence that a defendant touched a victim’s ‘butt’ or ‘buttocks’ is

insufficient to show the defendant touched [the] victim’s ‘anus.’” State v. Hahn, 35 S.W.3d 393,

395 (Mo. App. E.D. 2000). The rationale for this rule is that the “anus” and the “butt” are

distinct body parts. “‘Anus’ is defined as ‘the posterior opening of the alimentary canal.’ ‘Butt’

is defined as ‘buttocks.’ A ‘buttock’ is defined as ‘either of the rounded parts at the back of the

hips; either half of the rump.’” State v. Wilson, 489 S.W.3d 349, 355 (Mo. App. E.D. 2016)

(quoting State v. Ray, 407 S.W.3d 162, 167 (Mo. App. E.D. 2013)). Despite the general rule,

“Missouri courts have held that a jury could infer contact with the victim’s ‘anus’ from

testimony that the defendant touched the victim’s ‘butt,’ ‘behind,’ or ‘bottom,’ when specific

evidence supports such an inference.” Id. (quoting Ray, 407 S.W.3d at 167). Specific supportive

evidence includes indications that the defendant tried to put his penis in the victim’s “butt,” and

that the victim experienced pain as a result. Wilson, 489 S.W.3d at 356 (holding there was

sufficient supportive evidence where the victim testified that the defendant “tried to put his penis

in my butt”); State v. O'Neal, 651 S.W.2d 634, 637 (Mo. App. S.D. 1983) (holding there was

sufficient supportive evidence where the victim testified that it “hurt pretty bad” when the

defendant touched her “bottom” with his penis).

 31
 In this matter, Child testified that Minor “tried to stick [his penis] in [her] butt.” In

Child’s second forensic interview, which was played for the jury, Child stated that she felt

Minor’s “ding-a-ling” on her “butt” and her “butt” was hurting when Minor tried to put his

“ding-a-ling” in it. Child stated that she was not wearing pants or underwear when this occurred.

As in both Wilson and O’Neal, in the light most favorable to the verdict, this evidence was

sufficient to allow the jury to infer that Minor’s penis touched Child’s anus, despite the lack of

anatomical specificity. Minor’s third point is denied.

 Minor’s remaining points

 Minor’s remaining points relate to statements made during closing argument and claimed

errors in the admission of evidence. Because these matters will be influenced by the state of the

record if the issues arise again during retrial, we do not reach Minor’s remaining points.

 Conclusion

 For the reasons stated in this opinion we would be inclined to reverse Minor’s

convictions and sentences and remand the matter for further proceedings consistent with this

opinion. Given the general interest and importance of the questions presented, however, we do

not finally decide Minor’s appeal, but instead transfer his appeal to the Missouri Supreme Court

pursuant to Rule 83.02.

 Thomas N. Chapman, Presiding Judge

Thomas N. Chapman, Presiding Judge writes for the majority.
Anthony Rex Gabbert, Judge, concurs.
Karen King Mitchell, Judge, writes a separate concurring opinion.

 32
 IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

 STATE OF MISSOURI, )
 )
 Respondent, )
 WD83298
 v. )
 )
 OPINION FILED:
 )
 December 21, 2021
 DAVIUNE C. MINOR, )
 )
 Appellant. )

 Concurring Opinion

 Though I concur with the result reached by the majority, I write separately because I believe

that most of the evidence admitted under Article I, § 18(c), of the Missouri Constitution failed to

meet a threshold requirement for admission under § 18(c) insofar as the evidence’s purpose was

to corroborate a propensity witness’s testimony, rather than to corroborate the victim’s testimony

or independently demonstrate Minor’s propensity to engage in the charged conduct.

 By its own terms, § 18(c) expressly limits the purpose of admitting “relevant evidence of

prior criminal acts” to (1) “corroborating the victim’s testimony”;1 or (2) “demonstrating the

defendant’s propensity to commit the crime with which he or she is presently charged.” Mo. Const.

art. I, § 18(c). To “corroborat[e] the victim’s testimony” means “[t]o strengthen or confirm; to

 1
 Here, “victim” means the alleged victim of the crime for which defendant is presently being prosecuted.
make more certain” the victim’s account. CORROBORATE, Black’s Law Dictionary (11th ed. 2019).

And to “demonstrat[e] the defendant’s propensity” means “to show clearly” that the defendant has

“[a] natural tendency to behave in a particular way,” especially that the defendant “is prone to a

specific type of bad behavior” (here, crimes of a sexual nature involving a victim under eighteen

years of age). DEMONSTRATE, Merriam-Webster.com Dictionary, https://www.merriam-

webster.com/dictionary/demonstrate (Last accessed Sept. 8, 2021); PROPENSITY, Black’s Law

Dictionary (11th ed. 2019).

 I agree with the majority that L.W.’s testimony was admissible under § 18(c) because it

was probative evidence regarding Minor’s propensity to commit first-degree statutory sodomy, as

it clearly showed that Minor was prone to that specific type of bad behavior. Her testimony

established that, at the time of Minor’s acts, L.W. was five years old, Minor was dating L.W.’s

mother, Minor forced L.W. to put her mouth on his penis while he held his hand on her head, and

he did so at night while others were in the home sleeping. Thus, L.W.’s testimony was probative

of Minor’s propensity to engage in the charged offense of first-degree statutory sodomy.

 And, while I agree with the majority’s conclusion that testimony from M.W. and T.F., as

well as State’s Exhibits 3, 15, and 16, were inadmissible, I disagree with the majority’s

characterization of this evidence as propensity evidence for purposes of § 18(c). As noted above,

for evidence to be relevant and admissible under § 18(c), it must satisfy one of the two permissible

purposes expressly identified: it must either corroborate the testimony of the victim of the charged

crime(s) or directly show the defendant’s propensity to commit the charged crime(s). Plainly, none

of the evidence from M.W., T.F., or Exhibits 3, 15, and 16, corroborated Child’s testimony.

Therefore, to be admissible, the evidence needed to demonstrate Minor’s propensity to engage in

 2
the charged conduct, i.e., it needed “to show clearly” that Minor has “[a] natural tendency to

behave in a particular way.”

 Here, however, this evidence failed to demonstrate Minor’s propensity to engage in the

charged conduct and, therefore, is not “propensity” evidence. Though M.W. and T.F.’s testimony

was certainly relevant to strengthen or confirm L.W.’s credibility regarding her allegations against

Minor, it did not, on its own, clearly show that Minor had a natural tendency to behave in a

particular way. Neither M.W. nor T.F. offered any testimony about Minor engaging in prior similar

conduct; consequently, their testimony could not clearly show that Minor had a natural tendency

to engage in the charged conduct. Rather, their testimony was limited to supporting L.W.’s

credibility. It was only L.W.’s testimony that clearly showed the fact that Minor had a natural

tendency to engage in similar conduct. And, while supporting L.W.’s credibility certainly helped

prove that Minor engaged in the alleged acts, it did so only by establishing the truth of L.W.’s

testimony. But § 18(c) does not allow for evidence that is merely corroborative of propensity

evidence; it allows for only evidence that actually demonstrates the defendant’s propensity to

commit a charged offense. State v. Williams, 548 S.W.3d 275, 289 (Mo. banc 2018) (“the evidence

of the prior criminal act must tend to show the defendant actually had a propensity to commit

the charged crime at the time it is alleged to have occurred.” (emphasis added)); see also

Huddleston v. United States, 485 U.S. 681, 689 (1988) (holding that “similar act evidence is

relevant only if the jury can reasonably conclude that the act occurred and that the defendant was

the actor.”).2 Permitting the State to use evidence under § 18(c) that merely corroborates true

 2
 The majority argues that “Williams’s citation to the conditional relevance standard delineated in Huddleston
[v. United States, 485 U.S. 681, 690 (1988)] . . . refers to whether the evidence examined as a whole is sufficient for
the factfinder to conclude the defendant committed the prior criminal act, rather than whether each individual item of
evidence is itself sufficient for the jury to conclude the defendant committed the prior criminal act.” Maj. Op. at 17
n.12. I do not quarrel with the fact that Huddleston stated, “[I]ndividual pieces of evidence, insufficient in themselves
to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its
constituent parts.’” Huddleston, 485 U.S. at 691 (quoting Bourjaily v. United States, 483 U.S. 171, 179-180 (1987)).

 3
propensity evidence, rather than independently demonstrating actual propensity, allows the

exception that is § 18(c) to swallow the rule generally banning propensity evidence due to its

tendency to confuse the issues.3

 From the record, it appears that the State did not originally intend to introduce anything

beyond L.W.’s testimony to establish Minor’s prior acts against her.4 That approach apparently

changed, however, after Minor’s counsel indicated in a pre-trial hearing that she wanted to depose

M.W. and T.F. and that she might seek to impeach L.W.’s account of events and set up Minor’s

theory of defense to the charged crimes.5 It seems that the State then chose to offer testimony from

both M.W. and T.F. during its case-in-chief in order to inoculate the jury against defense counsel’s

possible impeachment efforts and to prove L.W.’s allegations by a preponderance of the evidence.

Though the State’s approach may reflect sound strategic considerations, it was problematic when

used with respect to evidence offered under § 18(c) because it created the exact risk realized in

this case: it created an unnecessary mini-trial on the prior criminal acts and confused the jury.6

But that proposition is simply inapplicable here. The issue before us is not whether the evidence, as a whole, was
sufficient to establish Minor’s propensity to engage in similar acts; the issue is whether the evidence was admissible
in the first instance. And, as Huddleston noted, to be admissible, the evidence must be offered for a proper purpose.
Id. at 687 (noting that Federal Rules of Criminal Procedure 404-412, while not wholesale barring admission of certain
kinds of evidence, do “limit the purpose for which it may be introduced.” (emphasis added)). Here, because the
testimony of M.W. and T.F., as well as State’s Exhibits 3, 15, and 16, were introduced for the purpose of corroborating
L.W.’s testimony, which is not a proper purpose under § 18(c), the evidence failed to meet the threshold requirement
for admissibility.
 3
 “[A] general prohibition against the use of propensity evidence in criminal cases has been firmly engrained
in American jurisprudence throughout much of the nation’s history” because it risks confusion of the issues, and
§ 18(c) represents an exception to this general ban in the context of sexual crimes against children. Williams, 548
S.W.3d at 278 n.2, 281; Old Chief v. United States, 519 U.S. 172, 181 (1997).
 4
 This intent is reflected in both suggestions filed by the State in support of its motion to admit propensity
evidence and the following comments from the trial court during trial:
 I’ve got to tell you in full disclosure, had I known ahead of time [T.F.]’s testimony, there was
 probably substantial parts of it that I find not relevant, because it’s not propensity evidence, it’s the
 investigation and follow-up of propensity evidence, which is really trying two cases in one. And I
 don’t believe that’s what the Constitution allows.
 5
 Minor’s defense theory at trial was that his former paramours, including Child’s mother and T.F., were
angry at his infidelity and fabricated the allegations involving their children.
 6
 It appears that the State erroneously believed it had to prove the truth of L.W.’s allegations by a
preponderance of the evidence. Following T.F.’s testimony, the State sought to call the investigating detective for
L.W.’s case and argued to the court that the detective’s testimony was needed, stating, “Judge, . . . I have a burden of

 4
 In sum, all evidence pertaining to L.W.’s allegations beyond L.W.’s testimony itself was

inadmissible in the State’s case-in-chief because it was introduced for an improper purpose—to

corroborate L.W.’s testimony. Accordingly, I would hold that testimony from M.W. and T.F., as

well as State’s Exhibits 3, 15, and 16, were inadmissible because none of this evidence satisfied

either of the two permissible purposes for admission of evidence under § 18(c), and I would not

reach the legal relevance balancing test. In all other respects, I concur with the majority opinion.

 Karen King Mitchell, Judge

proof to meet before the jury may consider propensity evidence. I have to prove that beyond a preponderance of the
evidence.” But, as the United States Supreme Court held in Huddleston, “In determining whether the Government
has introduced sufficient evidence to meet [the conditional relevance standard] under Rule 104(b), the trial court
neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance
of the evidence.” 485 U.S. at 690. And, as our Supreme Court indicated in Williams, the burden of proof for admission
of propensity evidence is no different than the standard by which we assess challenges to the sufficiency of the
evidence. Williams, 548 S.W.3d at 288 (“[b]efore propensity evidence can be said to have any probative value, it
must be sufficient for the jury to conclude the defendant actually committed the prior criminal act.”). Under that
standard, “[t]he testimony of only one witness may be sufficient to sustain a conviction, even if the testimony is
inconsistent.” State v. Burge, 596 S.W.3d 657, 664 (Mo. App. S.D. 2020) (quoting State v. Alexander, 505 S.W.3d
384, 395 (Mo. App. E.D. 2016)). Here, if the jury believed L.W.’s testimony, that testimony was sufficient, in itself,
to establish Minor’s propensity to commit the charged crimes. The State was not required to do more. Rather, the
more prudent course for the State to follow would be to exercise restraint when introducing propensity evidence and
limit the introduction to only that which is “practically necessary” to establish the prior act in order to avoid tipping
the scales in favor of substantial prejudice. See Williams, 548 S.W.3d at 289 (“Prior acts evidence . . . must . . . be . . .
practically necessary.” (quoting United States v. LeMay, 260 F.3d 1018, 1029 (9th Cir. 2001)). This is not to say that
the evidence the State introduced would likewise be inadmissible following any cross-examination by Minor’s
counsel. At that point, it may be that a door would be opened allowing the admission of otherwise inadmissible
evidence.

 5